# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

Gina C. M.,

Plaintiff,

v.

Frank Bisignano, Commissioner of Social Security,

Defendant.

Case No. 2:25-cv-00945-DJA

**Order**

Before the Court is Plaintiff Gina C. M.'s motion for reversal of the Administrative Law Judge's ("ALJ") decision regarding her Social Security appeal and remand for benefits. (ECF No. 13). Also before the Court is the Commissioner's brief in response, asking the Court to affirm (ECF No. 15). Plaintiff filed a reply. (ECF No. 16). Because the Court finds that the ALJ erred in rejecting Plaintiff's physical and mental symptom testimony but that remand for payment of benefits is not the appropriate remedy and that the ALJ did not err in assessing the RFC, it grants in part and denies in part Plaintiff's motion. The Court finds these matters properly resolved without a hearing. LR 78-1.

## BACKGROUND

### I.    Procedural history.

Plaintiff filed an application for a period of disability and disability insurance benefits on December 6, 2021, alleging disability commencing February 3, 2021.[1] (ECF No. 13 at 3). The

---

[1] In their arguments, the parties also reference Plaintiff's prior application for benefits and the ALJ's decision on that application. So, the Court includes that procedural history here. On September 27, 2018, Plaintiff filed a protective Title II application for a period of disability and disability insurance benefits, alleging disability beginning February 1, 2018. (AR 115). That claim was denied initially on December 5, 2018, and upon reconsideration on March 18, 2019. (AR 115). Plaintiff requested a hearing and, on February 2, 2021, ALJ Alan J. Markiewicz issued

Commissioner denied the claim by initial determination on June 8, 2022, and denied reconsideration on August 31, 2022. (*Id.*). Plaintiff requested a hearing before an ALJ and on June 1, 2023, ALJ Michael D. Radensky published an unfavorable decision. (*Id.*). Plaintiff requested that the Appeals Council review the decision on June 16, 2023, and the Appeals Council denied the request for review on January 10, 2024, on which date the ALJ's decision became the final decision of the Commissioner. (*Id.*). The Appeals Council granted Plaintiff a thirty day extension of time to file a civil action. (*Id.*). Plaintiff then timely filed the instant civil action.

**II.     The ALJ decision.**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). (AR 24-36). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 3, 2021, the alleged onset date. (AR 27). At step two, the ALJ found that Plaintiff has the following severe impairments: tendinitis of the right shoulder, right carpal tunnel syndrome, disc disease of the cervical spine, major depressive disorder, generalized anxiety disorder, and posttraumatic stress disorder. (AR 27). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 28). In making this finding, the ALJ considered all medical listings, including listings 1.15, 1.18, 11.14, 12.04, 12.06, and 12.15. (AR 28-29).

At step four, the ALJ found that Plaintiff,

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), specifically as follows: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 6 hours out of an 8-hour workday with regular breaks; can sit for 6 hours out of an 8-hour workday with regular breaks; can occasionally push and pull with the right upper extremity; can occasionally climb ladders, ropes, and scaffolds; is not limited in climbing ramps and stairs; can occasionally crawl; can occasionally reach overhead with the right upper extremity; can frequently finger

an unfavorable decision. (AR 128). The Appeals Council denied Plaintiff's request for review of that decision on July 21, 2021. (AR 135-37).

> with the right upper extremity; is limited to work involving simple repetitive tasks; and should have no more than occasional contact with supervisors, coworkers, and the public.

(AR 30).

In making the step four finding, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 30). In drawing this conclusion, the ALJ first summarized Plaintiff's testimony as follows:

> In this case, the claimant alleged she suffers from physical symptoms of neck and shoulder pain and tingling in the hands and mental symptoms of anxiety, panic attacks, decreased concentration, and nightmares about harassment at work. With regard to mental health treatment, the claimant stated she stopped taking psychotropic medications due to adverse reactions and currently she was [sic] in bi-weekly therapy.

(AR 30).

At step five, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 34). The ALJ further relied on the testimony of the vocational expert, who opined that Plaintiff could perform the requirements of representative occupations such as cleaner and polisher, marker, produce weigher, and shipping and receiving weigher. (AR 35). Accordingly, the ALJ found that Plaintiff had not been disabled since February 3, 2021, through the date of the decision, June 6, 2023. (AR 35-36).

## STANDARD

The court reviews administrative decisions in social security disability benefits cases under 42 U.S.C. § 405(g). *See Akopyan v. Barnhard*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states, "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action…brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." *Id.* The Ninth Circuit reviews a decision of a District Court affirming, modifying, or reversing a decision of the Commissioner *de novo*. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2003).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

### DISABILITY EVALUATION PROCESS

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

§ 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).[2] If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. 20 C.F.R. § 404.1521; 20 C.F.R.§ 920(c); *see also* Social Security Rulings ("SSRs") 85-28. If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

---

[2] 20 C.F.R. § 404 addresses federal old-age, survivors, and disability insurance while 20 C.F.R. § 416 addresses supplemental security income for the aged, blind, and disabled. However, the five-step evaluation process under either section is the same.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526; 20 C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509; 20 C.F.R. § 416.909), then a finding of disabled is made.  20 C.F.R. § 404.1520(h); 20 C.F.R. § 416.920(a)(4)(iii).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's RFC, which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; 20 C.F.R. § 416.945; *see also* SSR 16-3p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must evaluate the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927 (for claims filed before March 27, 2017) and 20 C.F.R. § 1520c and 20 C.F.R. § 416.920c (for claims filed on or after March 27, 2017)

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW").  20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(a)(1)(iv).  PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years before the date that disability must be established.  In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA.  20 C.F.R. §§ 404.1560(b) and 404.1565; 20

C.F.R. § 416.960(b)(1)(i).  If the individual has the RFC to perform her past work, then a finding of not disabled is made.  If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

Step five requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(a)(4)(v).  If she can do other work, then a finding of not disabled is made.  Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner.  The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do.  *Yuckert*, 482 U.S. at 141-42.

**ANALYSIS AND FINDINGS**

Plaintiff argues that the ALJ erred by failing to give clear and convincing reasons for rejecting Plaintiff's testimony and that the ALJ's mental capacity RFC lacks the support of substantial evidence.  The Court finds aspects of Plaintiff's first argument persuasive and therefore grants her motion on that basis.  The Court does not find Plaintiff's second argument persuasive and therefore denies her motion on that basis.

In making her first argument, Plaintiff further asks the Court to reverse the ALJ's decision and remand not for further findings, but for payment of benefits.  However, although the Court finds that the Plaintiff has demonstrated that the ALJ erred, the Court does not find that Plaintiff has met the standard for payment of benefits.  So, the Court denies Plaintiff's motion on this basis.

**I.      Whether the ALJ erred by failing to give clear and convincing reasons for rejecting Plaintiff's testimony.**

**A.      The parties' arguments.**

First, Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's testimony regarding her physical impairments.  (ECF No. 13 at 9).  Plaintiff argues that the ALJ simply summarized Plaintiff's MRIs of her right shoulder and her medication and summarized the evidence showing Plaintiff's cervical spine and right carpal tunnel syndrome.

(*Id.*).  Plaintiff argues that it was error for the ALJ to reject her testimony simply by summarizing the evidence in support of the RFC.  (*Id.*).  Plaintiff argues that it was also an error for the ALJ to find that Plaintiff's conservative treatment was a basis to reject her testimony because the ALJ did not also identify more aggressive treatment options that would be commensurate with Plaintiff's symptom testimony.  (*Id.*).  This is especially true, Plaintiff asserts, because her "access to medical treatment is restricted by the parameters of her pending workers' compensation claim."  (*Id.*).  Plaintiff adds that the ALJ's reliance on Plaintiff's conservative treatment to reject her testimony is just an extension of the ALJ's finding that Plaintiff's symptoms lack objective support, which is not a sufficient basis on which to reject Plaintiff's testimony.  (*Id.*).

Second, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony regarding her mental impairments.  (*Id.* at 10).  Plaintiff again argues that the ALJ simply summarized the medical evidence and noted that Plaintiff responded to therapy and did not require hospitalization.  (*Id.*).  Plaintiff asserts that her lack of hospitalization is not a clear and convincing reason to reject her testimony because the state of California, where she lived at the time, requires that there be probable cause to believe that a person is a danger to themselves or others in order to involuntarily hospitalize them.  (*Id.*).  Plaintiff adds that just because she demonstrated some improvement did not mean that she could function in the workplace.  (*Id.*).  Instead, Plaintiff asserts that the ALJ should have considered Plaintiff's improvement in the context of the overall diagnostic picture.  (*Id.* at 11).

Third, Plaintiff argues that her activities of daily living were actually consistent with her testimony and so, the ALJ erred by relying on those activities to reject her testimony.  (*Id.* at 11).  Plaintiff points out that she only makes simple meals; that her husband assists her in caring for her children; that although she checked a box on a report that she could drive a car, really, her husband is the one who drives her; and that she rarely grocery shops but normally orders her groceries.  (*Id.* at 11-12).  Plaintiff asserts that the ALJ's reliance on treatment notes showing that she plays music, makes baskets, and walks ten minutes a day are not clear and convincing reasons to reject her testimony because those are things that her therapist encouraged her to do by prompting her to engage in one positive activity per day.  (*Id.*).  Plaintiff adds that, in relying on

these treatment notes, the ALJ ignored portions of the notes where Plaintiff reported her challenges and pain. (*Id.*).

Fourth, Plaintiff asserts that the ALJ failed to address Plaintiff's strong work history, which lends to her credibility. (*Id.*). Plaintiff adds that the fact that the ALJ did not identify any untruthfulness in her testimony lends to her credibility. (*Id.* at 13). Plaintiff concludes that the Court should credit Plaintiff's testimony as true, reverse, and remand for direct payment of benefits. (*Id.* at 13-14).

Responding to Plaintiff's first argument, the Commissioner argues that the ALJ properly found that imaging and examinations of Plaintiff's shoulder, spine, and right wrist did not fully support Plaintiff's allegations. (ECF No. 15 at 6). The Commissioner points out that the ALJ observed that Plaintiff's February 2022 shoulder MRI showed only mild issues and that while her October 2022 examination showed some motor strength weakness of the right shoulder, she otherwise exhibited a full active range of motion and intact sensation. (*Id.*). The Commissioner adds that the ALJ similarly noted that Plaintiff's imaging and examinations of her cervical spine also revealed mild or normal findings other than a mildly decreased range of motion. (*Id.*). The Commissioner asserts that the ALJ reasonably found that Plaintiff's normal range of motion, normal sensation, and normal muscle bulk and tone at an April 2022 examination was inconsistent with her history of right carpal tunnel syndrome. (*Id.*). The Commissioner asserts that records showing no loss of muscle bulk and tone also contradict Plaintiff's allegations of limitations due to neck and shoulder pain and difficulty using the right arm. (*Id.* at 7). Regarding Plaintiff's response to treatment, the Commissioner asserts that the ALJ properly relied on her conservative treatment with non-opioid medication as a basis to reject her testimony. (*Id.* at 7). The Commissioner also points to Plaintiff's treatment with gabapentin and ibuprofen and her reports that the gabapentin was helpful, arguing that the ALJ rationally discounted Plaintiff's allegations based on this treatment and her response to it. (*Id.* at 8). The Commissioner argues that the ALJ was not required to identify more aggressive treatment options and asserts that Plaintiff holds the burden of proving that she is disabled. (*Id.* at 11). And regardless of whether

more aggressive treatment options existed, the Commissioner argues that impairments that respond well to prescribed treatment are not disabling. (*Id.*).

Responding to Plaintiff's second argument, the Commissioner asserts that the ALJ reasonably found that the medical evidence of Plaintiff's mental impairments contradicted the extent of her alleged limitations. (*Id.* at 6). The Commissioner asserts that Plaintiff's mental health testing showed no deficits and that examinations showed normal memory, concentration, and attention, which findings contradicted Plaintiff's allegations of disabling anxiety, depression, and posttraumatic stress disorder. (*Id.* at 7). Regarding Plaintiff's response to psychotherapy treatment, the Commissioner points out that Plaintiff described her therapy as helpful in both her treatment notes and at the hearing. (*Id.* at 8). The Commissioner asserts that this was a reasonable basis for the ALJ to undermine her allegations. (*Id.*). The Commissioner responds to Plaintiff's argument that the ALJ should have considered Plaintiff's improvement within the "overall diagnostic picture" by pointing out that Plaintiff did not assert that the "diagnostic picture" contradicted the ALJ's conclusions in any way. (*Id.* at 11). The Commissioner adds that Plaintiff has failed to show that, even if the ALJ did err, that the error was harmful. (*Id.* at 11-12).

Responding to Plaintiff's third argument, the Commissioner asserts that the ALJ reasonably found that Plaintiff's activities of daily living conflicted with the extent of her symptom allegations. (*Id.* at 8). The Commissioner points out that Plaintiff reporting being able to prepare simple meals, drive a car, shop in stores or online, supervise her children, pay bills, and handle a savings account, along with her activities of playing music, making baskets, and walking for exercise, were rational bases for the ALJ to discount Plaintiff's allegations. (*Id.* at 9). Specifically, the Commissioner asserts that these activities contradict Plaintiff's allegations of debilitating anxiety, panic attacks, and decreased concentration. (*Id.*). The Commissioner adds that, even if Plaintiff's activities of daily living could be construed as consistent with her allegations, where the evidence could support more than one rational conclusion, the Court must uphold the ALJ's interpretation. (*Id.* at 12).

The Commissioner does not respond to Plaintiff's fourth argument. However, the Commissioner asserts that the ALJ reasonably found the prior administrative medical findings

and medical opinions to contradict the extent of Plaintiff's alleged limitations. (*Id.* at 9). The Commissioner asserts that no medical professional opined that Plaintiff had greater functional limitations than those reflected in the ALJ's RFC. (*Id.*). The Commissioner highlights the opinions of Seung Ha Lim, M.D.; John Petzelt, Ph.D.; M.D. Morgan, M.D.; and Charlene K. Krieg, Ph.D. to demonstrate that they opined less limitations than the RFC. (*Id.* at 10). The Commissioner adds that there is no medical opinion or prior administrative medical finding supporting the extent of Plaintiff's allegations. (*Id.*).

In reply, Plaintiff reiterates that the ALJ's reasons for discounting Plaintiff's testimony were not clear and convincing. (ECF No. 16 at 3). Plaintiff points out that, at step two she was only required to establish a medically determinable impairment and, once established, her symptom testimony must be linked to the existence—not the degree—of pain or limitation. (*Id.* at 3-4). Absent malingering, Plaintiff argues, the ALJ was required to offer clear and convincing reasons to reject this testimony. (*Id.*). Plaintiff also asserts that where the ALJ found inconsistencies between the evidence and Plaintiff's physical symptom testimony, the ALJ only focused on the evidence that supported the RFC, which was error because it meant that the ALJ rejected Plaintiff's subjective testimony based only on a lack of medical evidence. (*Id.*). Regarding her treatment, Plaintiff asserts that both the ALJ and the Commissioner failed to acknowledge that Plaintiff tried numerous medications but experienced adverse side effects and limited benefit. (*Id.* at 4-5). Plaintiff adds that her treatment was constrained by her workers compensation claim parameters, which constraints the ALJ and Commissioner failed to recognize. (*Id.*). Plaintiff also asserts that the Commissioner failed to address the evidence showing that Plaintiff did not experience significant improvement with treatment. (*Id.*). Regarding the Commissioner's reliance on medical opinions, Plaintiff argues that the issue is not whether Plaintiff's testimony aligns with medical opinions, but whether the ALJ properly evaluated her testimony. (*Id.*). Plaintiff reiterates that the Commissioner failed to address Plaintiff's strong work history. (*Id.*).

///

///

### *B.    Discussion.*

The ALJ must make two findings before the ALJ can find a claimant's pain or symptom testimony not credible.  42 U.S.C. § 423(d)(5)(A) (explaining that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability" absent additional findings).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide "specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the severity of the claimant's symptoms.  *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014).

Because the "grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," the agency must explain its reasoning.  *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1101-102 (9th Cir. 2014).  The Ninth Circuit thus requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and ... explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (citing *Bunnell*, 947 F.2d at 346 and *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  That means "[g]eneral findings are insufficient."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (superseded on other grounds); *see Holohan*, 246 F.3d at 1208 (concluding "that the ALJ's credibility determination was erroneous" because it was based on the ALJ's characterization of "the 'record in general'").

"An ALJ's vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review."  *Treichler*, 775 F.3d at 1103. (internal quotations omitted).  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by

substantial evidence." *Id.* It is not enough for an ALJ to state their non-credibility conclusion and then summarize the medical evidence for their RFC determination. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). On the other hand, the Court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Burch*, 400 F.3d at 680–81 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959; *Perez v. Astrue*, 247 F.App'x 931, 934 (9th Cir. 2007) (unpublished).

Here, the Court finds that Plaintiff's first two arguments are meritorious and therefore grants her motion on those grounds. The Court turns first to Plaintiff's argument that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's allegations regarding her physical impairments. The Court finds that the ALJ erred because he did not specifically identify the testimony he found not to be credible and did not explain what evidence undermines the testimony. Plaintiff's argument that the ALJ only summarized the medical evidence for the RFC determination is persuasive. The ALJ did not identify the portions of Plaintiff's testimony regarding her shoulder, neck, and wrist that he found to be un-credible and why. Instead, he summarized the medical evidence supporting the RFC. And while that evidence did show mild findings and Plaintiff's positive response to treatment, as the Commissioner points out, the ALJ needed to further provide some reasoning for the Court to determine whether the ALJ's decision to discount Plaintiff's physical symptom testimony was supported by substantial evidence.[3] This

---

[3] In reaching this conclusion, the Court is not persuaded by Plaintiff's argument that the ALJ was required to identify more aggressive treatment options that would be commensurate with Plaintiff's symptom testimony in order to use Plaintiff's conservative treatment to discount her testimony. It is not clear to the Court, based on the authority that Plaintiff cites, that the ALJ was required to take this specific step. Instead, the Ninth Circuit's decision in *Lapeirre-Gutt v. Astrue* stands for the proposition that "[a] claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). And the Central District of California extrapolated from that decision that "an ALJ errs in relying on conservative treatment if 'the record does not reflect that more aggressive treatment options are appropriate or available.'" *Cortes v. Colvin*, No. 2:15-cv-02277-GJS, 2016 WL 1192638 at *4 (C.D. Cal. Mar. 28, 2016) (quoting *Lapeirre-Gutt*, 382 F. App'x at 664). It appears, based on these cases, not that the ALJ was required to take the affirmative step of identifying more aggressive treatment options for Plaintiff, but that the ALJ was precluded from relying on Plaintiff's conservative treatment where the record shows that there are no more

is true even considering the ALJ's discussion of Plaintiff's activities of daily living—discussed more fully below—because in stating that Plaintiff's activities were inconsistent with her allegations that her physical problems prevent her from working, the ALJ did not specifically identify the testimony he found not to be credible and why. (AR 31-32). So, the Court finds that the ALJ erred in rejecting Plaintiff's physical symptom testimony.

The Court turns next to Plaintiff's second argument that the ALJ failed to provide clear and convincing reasons to reject Plaintiff's testimony regarding her mental impairments. The Court finds that the ALJ erred because he again did not specifically identify the testimony he found not to be credible and did not explain what evidence undermines the testimony. Although Plaintiff's descriptions of therapy as helpful, decision not to use psychotropic medications due to side effects, lack of hospitalizations,[4] and daily activities *could* be a reasonable basis for the ALJ

options available for her. And while Plaintiff claims that her "access to medical treatment is restricted by the parameters of her pending workers' compensation claim," it is not clear that that is the case. Indeed, it does not appear that Plaintiff's worker's compensation claim was ongoing at the time of the second ALJ decision. Plaintiff's testimony from May of 2023 confirms that her worker's compensation claim had concluded in 2020. (AR 59). But even if her worker's compensation claim was ongoing, it is not clear that the restrictions that Plaintiff's worker's compensation claim placed on her medication made it so that "non-conservative treatment options" did not exist for her. Although not entirely clear, it appears from Plaintiff's testimony that her worker's compensation claim may have only resulted in an eight month gap in Plaintiff's prescriptions for Prilosec, gabapentin, and Tramadol between December of 2019 and August of 2020. *Compare* (AR 91) ("[t]he Prilosec was not filled…because it was given by the worker's comp physician and all the worker's comp medication has been denied since December of last year…So I was no longer able to take any Gabapentin or take any Tramadol [for] my discomfort. And the new prescription was just given in August of this year.") *with* (AR 92) ("[s]o since January, I've only taken blood pressure [medication] and ibuprofen."). And regardless of whether Plaintiff was able to fill her prescriptions for Tramadol, Prilosec, and gabapentin following her worker's compensation claim, as of May of 2023, Plaintiff only testified that she was taking ibuprofen and gabapentin for pain. (AR 53) (explaining that she takes ibuprofen and gabapentin for pain). Plaintiff does not argue that she still requires Tramadol and Prilosec but cannot obtain it. Given these issues, the Court does not find that the ALJ erred in only addressing Plaintiff's treatment with gabapentin and ibuprofen, in not mentioning the impact of Plaintiff's worker's compensation claim on those medications, and in indicating that Plaintiff had reported that the medication helped her. (AR 31).

[4] Plaintiff's argument that her lack of hospitalization is not a clear and convincing reason because of California's high standard for involuntary hospitalization is not persuasive. This is because it is not clear that the ALJ's reference to hospitalization was specifically to *involuntary* hospitalization.

to reject her testimony, the ALJ did not explain which portions of her testimony he was rejecting as a result. So, the Court finds that the ALJ erred in rejecting Plaintiff's mental symptom testimony.

The Court turns next to Plaintiff's third argument that the ALJ erred in relying on Plaintiff's activities of daily living to reject her testimony. The Court does not find that the ALJ's reliance on Plaintiff's activities of daily living was an error. While Plaintiff asserts that her activities of daily living were actually consistent with her testimony, Plaintiff's arguments offer a different interpretation of the evidence. And, when the evidence will support more than one rational conclusion, the Court must defer to the ALJ's conclusion. Moreover, the ALJ here acknowledged that Plaintiff's "ability to perform these activities does not necessarily prove she could obtain and maintain employment" but also found that "her ability to perform these activities does suggest she is not as limited as she has alleged…" (AR 32). Of course, as outlined above, the Court finds that the ALJ did not explain which portions of Plaintiff's testimony her activities of daily living contradicted, and so erred in that regard. But it was not error for the ALJ to rely on her activities as a basis to reject her testimony.

The Court turns next to Plaintiff's fourth argument, that the ALJ failed to address Plaintiff's strong work history, and the fact that the ALJ identified no untruthfulness in her testimony. The Court does not find that the ALJ erred simply by not addressing Plaintiff's work history and truthfulness. While Plaintiff argues that consideration of these factors *would* weigh in her favor, she identifies no authority standing for the proposition that the ALJ was required to articulate his consideration of them. To the contrary, Ninth Circuit cases addressing these factors have stated that the factors are amongst those the ALJ "may" consider. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (explaining that "[t]he ALJ *may* consider at least the following factors when weighing the claimant's credibility: claimant's reputation for truthfulness…her work record…") (emphasis added) (cleaned up) (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *see Light*, 119 F.3d at 792 (explaining that "[i]n weighing a claimant's credibility, the ALJ *may* consider his reputation for truthfulness…his work record…") (emphasis added); *see Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (explaining

that "[f]actors that an ALJ *may* consider in weighing a claimant's credibility include reputation for truthfulness…") (emphasis added). The Commissioner did not respond to this argument, but instead argued that the ALJ reasonably found that no medical opinion contradicted the extent of Plaintiff's alleged limitations. The Court is also not persuaded by the Commissioner's argument because the ALJ did not use the medical opinions of record as a reason to reject Plaintiff's testimony, but rather to address the RFC.

Ultimately, the Court finds that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony regarding her physical and mental limitations because the ALJ did not specifically identify which testimony he found not to be credible and which evidence undermined that testimony. So, the Court grants Plaintiff's motion on this ground. However, as discussed more fully below, the Court does not find reversal and remand for benefits to be appropriate here and therefore grants Plaintiff's motion in part.

## II.    Whether the ALJ's mental RFC limitations lack the support of substantial evidence.

### A.    The parties' arguments.

Plaintiff argues that the ALJ's RFC regarding her mental limitations lacks the support of any medical opinions and is therefore simply the ALJ's lay interpretation of the raw medical evidence. (ECF No. 13 at 14). Plaintiff asserts that the ALJ simply summarized medical evidence without then making it clear how the ALJ translated that evidence into the RFC. (*Id.* at 15). Plaintiff argues that this is particularly concerning because the ALJ relied only on the medical opinion of state agency psychological consultant M.D. Morgan, M.D. at the reconsideration level and Dr. Morgan's explanation simply adopted the prior, February 2021 unfavorable decision by ALJ Markiewicz. (*Id.*). Plaintiff asserts that Dr. Morgan acknowledged that Plaintiff's updated records showed that she was referred to County Mental Health and noted that the records showed that she was not on psychiatric medication. (*Id.*). Dr. Morgan used both observations to affirm the prior ALJ's decision. (*Id.*). Plaintiff asserts that this indicates that no medical opinion reviewed Plaintiff's mental health file after August 17, 2022, and so, the RFC is just the ALJ's lay opinion. (*Id.*). Plaintiff also asserts that the ALJ ignored the fact that Plaintiff cannot take medications because of adverse side effects. (*Id.* at 16). Plaintiff argues that the

ALJ's error is not harmless and constitutes a basis for the Court to remand for a new decision. (*Id.* at 18).

The Commissioner responds that the ALJ appropriately assessed Plaintiff's mental RFC and that it is indeed supported by a medical opinion. (ECF No. 15 at 12). The Commissioner asserts that the ALJ's RFC matches Dr. Morgan's findings at the reconsideration level. (*Id.*). The Commissioner points out that the ALJ found Dr. Morgan's findings to be both supported by the objective evidence that Dr. Morgan reviewed and consistent with Plaintiff's presentation at psychological consultative examiner Dr. Kreig's consultative examination. (*Id.* at 13-14). So, the Commissioner asserts, the ALJ appropriately adopted Dr. Morgan's findings in the RFC and Plaintiff's does not argue—at least not explicitly—that the ALJ erred in doing so. (*Id.* at 14). Instead, Plaintiff's argument that the ALJ erred by relying on no medical opinions at all in creating the RFC is confusing given the fact that the ALJ's RFC is explicitly based on the opinion of Dr. Morgan. (*Id.* at 15). To the extent Plaintiff intended to argue that the ALJ should have developed an additional medical opinion regarding Plaintiff's mental abilities based on the fact that there were records post-dating Dr. Morgan's opinion, the Commissioner asserts that the argument fails. (*Id.* at 15). This is because Plaintiff has not shown that an additional opinion would be necessary by pointing to ambiguous evidence or places where the record was inadequate. (*Id.*). Although Plaintiff argues that the record contains no medical opinions after August 2022, she also fails to allege that she experienced any significant deterioration after August 2022 that would make the existing medical opinions and prior administrative medical findings in the record inaccurate. (*Id.* at 15-16). The Commissioner adds that in April of 2022, Dr. Krieg found Plaintiff to have "no mental impairment that would limit her ability to engage in work activities and complete a normal workday or workweek." (*Id.* at 14) (citing AR 878). Also in April of 2022, state agency psychological consultant Dr. Petzelt found that Plaintiff's mental impairments were non-severe and caused no more than minimal mental limitations. (*Id.*) (citing AR 152-53). So, the RFC shows even greater limitations than those assessed by Dr. Petzelt and Dr. Krieg at the initial level. (*Id.* at 12). Additionally, the Commissioner argues, Plaintiff cites to no evidence to show that she is more limited than the RFC. (*Id.* at 12). Therefore, even if the

ALJ did err in assessing Plaintiff's RFC, which point the Commissioner does not concede, the Commissioner asserts that any error would have been harmless to the ultimate nondisability determination. (*Id.* at 12-13, 14-15).

Plaintiff replies that the Commissioner's reliance on Dr. Morgan's August 2022 administrative medical findings to support the ALJ's RFC is flawed because that opinion predated significant developments in Plaintiff's medical history. (ECF No. 16 at 5-6). Plaintiff asserts that the assessment failed to consider medical evidence like Plaintiff's referral to County Mental Health and subsequent documentation of her severe mental health impairments. (*Id.*). Plaintiff asserts that the County Mental Health providers who assessed Plaintiff in June of 2022 had a more recent and comprehensive understanding of her mental health conditions than Dr. Morgan, whose assessment predated this evidence. (*Id.* at 6). And without an updated medical opinion considering the complete medical record, Plaintiff asserts that the ALJ substituted his own lay interpretation of the medical evidence for that of a medical professional, which is reversible error. (*Id.*). Plaintiff also argues that the Commissioner's claim that Plaintiff failed to show that she is more limited than the RFC misplaces the burden because the ALJ is ultimately responsible for coming up with the RFC. (*Id.*).

### B.    Discussion.

"The ALJ must use 'some medical evidence of the claimant's ability to function in the workplace' in order to make a proper RFC assessment; '[t]he ALJ may not simply draw his own inferences about [the claimant's] functional ability from medical reports.'" *Koch v. Kijakazi*, 4 F.4th 656, 667 (8th Cir. 2021) (quoting *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017), and citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001)); *see also* POMS § DI 24510.001(A)(1) ("The RFC assessment [] is based primarily on medical evidence"). "[A]n ALJ's RFC determination need not reflect any particular provider's opinion precisely." *Howell v. Kijakazi*, No. 20-cv-2517-BLM, 2022 WL 2759090, at *7 (S.D. Cal. July 24, 2022) (citing *Turner v. Commissioner*, 613 F.3d 1217, 1223 (9th Cir. 2010)). But an ALJ cannot make medical judgments, only legal judgments, and cannot interpret raw medical data. *See id.* (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).

Courts in this circuit and others have concluded that when an ALJ rejects the expert opinions in the record and instead relies on his own judgment in determining a claimant's RFC, the ALJ's decision is unsupported by substantial evidence. *See Holtan v. Kijakazi*, No. 2:22-cv-01222-VCF, 2023 WL 2424648, at *2-3 (D. Nev. Mar. 9, 2023) (compiling cases). The Eastern District of California's decision in *deGutierrez v. Saul*, and the District of Nevada's decision in *Holtan v. Kijakazi*, stand for the proposition that an ALJ must explain how they reach the RFC, and must not rely on raw medical data in doing so, particularly if the ALJ rejects the medical opinions of record. In *deGutierrez v. Saul*, the Eastern District of California found that, after the ALJ rejected the medical opinions of record, the ALJ went on to base the RFC "solely on treatment notes, test results, and Plaintiff's testimony," which "did not provide sufficient indications of Plaintiff's functional limitations and were unclear as to their impact on Plaintiff's ability to work." *deGutierrez v. Saul*, No. 1:19-cv-00463-BAM, 2020 WL 5701019, at *5-6 (E.D. Cal. Sept. 24, 2020). "Thus, the ALJ apparently formulated an RFC based on her interpretation of the medical evidence, which is improper." *Id.* Similarly, in *Holtan v. Kijakazi.*, this district found that the ALJ erred by simply summarizing the medical evidence without making it clear how the ALJ then translated that evidence into an RFC. *Holtan*, 2023 WL 2424648, at *3. The court found this to be "particularly concerning because the ALJ did not rely on any of the medical opinions, <u>finding all of the medical opinions of record unpersuasive.</u>" *Id.* (emphasis in original). So, most salient to the *Holtan* court's decision was not that the ALJ rejected each of the medical opinions, but that the ALJ rejected those opinions and then did not articulate how they translated the evidence into an RFC.

Here, the Court finds that the ALJ did not err in assessing the RFC. As a preliminary matter, Plaintiff's arguments are not fully developed. Plaintiff asserts that "[t]here are no medical opinions supporting the limitations included in the ALJ's RFC for Plaintiff." (ECF No. 13 at 14). But this is untrue. The RFC that the ALJ assessed for Plaintiff's mental health was that Plaintiff "is limited to work involving simple repetitive tasks; and should have no more than occasional contact with supervisors, coworkers, and the public." (AR 28). This directly reflects the opinion of Dr. Morgan, who opined that Plaintiff "is limited to work involving simple, repetitive tasks and

should have no more than occasional contact with supervisors, coworkers, and the public." (AR 33) (AR 179-83). While Plaintiff takes issue with the fact that Dr. Morgan adopted the RFC from ALJ Markiewicz's February 2021 decision, Plaintiff does not argue why this was error. This argument is particularly lacking given the fact that the ALJ found Dr. Morgan's opinion persuasive because it was "well supported by the objective evidence he reviewed, which shows deficits in mood and affect, tearful presentation, and ongoing therapy" and "consistent with the mood and affect deficits and tearful presentation observed by psychology consultative examiner Dr. Krieg." (AR 33). This is exactly what the ALJ was required to do. *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (explaining that "[t]he most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability…and consistency….").

Because the ALJ's RFC was indeed supported by a medical opinion, Plaintiff's argument appears to be that, because Plaintiff's record contains medical notes post-dating Dr. Morgan's opinion, which notes were not reviewed by any opining physician, the ALJ must have improperly translated the findings in those notes into the RFC without the benefit of a medical opinion. But "an updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records." *Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (citing *de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014)). "Such an occurrence is quite common." *Id.* (citing *de Hoog*, 2014 WL 3687499, at *7 (explaining that "[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole.")). Instead, and as Plaintiff acknowledges, the ALJ is responsible for assessing the RFC based on all the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). And Plaintiff does not argue that the evidence post-dating Dr. Morgan's opinion rendered the record ambiguous or inadequate to allow for proper evaluation of the evidence such that the ALJ was required to further develop the record with an additional medical

opinion. *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (explaining that "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").

Plaintiff also fails to argue that the evidence post-dating Dr. Morgan's opinion was inconsistent with the evidence Dr. Morgan considered in reaching his opinion. But even if Plaintiff made this argument, it would be without merit. Dr. Morgan noted that Plaintiff's records showed deficits in her mood and affect, that she presented tearfully, and was in ongoing therapy. (AR 33). The records that Plaintiff claims that Dr. Morgan did not review showed the same. (AR 1089) (nervous and tearful); (AR 1092) (tearful); (AR 1093) (tearfulness); (AR 1572) (often broke down in tears); (AR 1573) (demonstrated significant psychological and physiological distress); (AR 1575) (tearful); (AR 1577) (cried several times); (AR 1578) (demonstrated significant distress); (AR 1581) (reported engaging in positive activities and a reduction of depression symptoms); (AR 1582) (tearful); (AR 1585) (positive statements regarding coping skills). So, the Court does not find that ALJ relied on raw medical data when crafting the RFC. The Court therefore denies Plaintiff's motion on this ground.

**III.    Whether reversal and remand for further proceedings or for award of benefits is appropriate.**

Plaintiff argues that reversal and remand for payment of benefits is the appropriate remedy to address the ALJ's failure to provide sufficient reasons for rejecting her testimony. The Court does not find this to be the case. When evaluating whether a case presents the "rare circumstances" justifying a reversal and remand for payment, the court normally applies a three-step test. *Treichler*, 775 F.3d at 1100-01. First, the court asks whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* Second, if the ALJ has erred, the court asks whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful. *Id.* Third, if the court concludes that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony true as a matter of law and then must determine whether the record, taken as a whole,

leaves not the slightest uncertainty as to the outcome of the proceeding. *Id.* When all three elements of the test are satisfied, a case raises the "rare circumstances" that allow the court to exercise its discretion to depart from the ordinary remand rule and to award benefits. *Id.* at 1101-1102. However, even when those "rare circumstances" are present, the decision whether to remand a case for additional evidence or simply to award benefits is in the court's discretion. *Id.*

Here, this case does not present the rare circumstances that would justify a reversal and remand for payment. Plaintiff asks the Court to reverse and remand for payment on the issue of the ALJ's consideration of the Plaintiff's testimony. However, even though the ALJ erred by discounting Plaintiff's testimony without sufficient reasoning, there are outstanding issues that must be resolved before determining that Plaintiff is disabled. For example, there is the outstanding issue that certain of Plaintiff's records indicate improvement with treatment or mild findings inconsistent with certain of her testimony. Further administrative proceedings would be useful in resolving these issues.

Because there are outstanding issues that further administrative proceedings could address, the Court cannot find that the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding. So, the Court denies Plaintiff's request that the Court credit her testimony as true and award benefits and instead remands the case for further proceedings.

///

///

///

**IT IS THEREFORE ORDERED** that Plaintiff's motion for reversal and remand (ECF No. 13) is **granted in part and denied in part.** It is granted in part regarding Plaintiff's request for remand for further proceedings to address the ALJ's error of not providing clear and convincing reasons for rejecting Plaintiff's physical and mental symptom testimony. It is denied in all other respects.

**IT IS FURTHER ORDERED** that this matter is remanded for further proceedings so that the ALJ may provide specific, clear and convincing reasons for rejecting Plaintiff's testimony regarding her physical and mental symptoms.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED: June 29, 2026,

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE